# IN THE OREGON TAX COURT

## SMITH et al
*v.*
## COLTON SCHOOL DISTRICT NO. 53
*and*
## DEPARTMENT OF REVENUE,
*Intervenor.*
(TC 2481)

Martin J. Birnbaum, Molalla, represented plaintiffs.

John C. Caldwell, Hibbard, Caldwell, Bowerman, Schultz & Hergert, P.C., Oregon City, represented defendant.

Elizabeth S. Stockdale, Assistant Attorney General, Department of Justice, Salem, represented intervenor.

Decision for plaintiffs rendered September 23, 1986.

**CARL N. BYERS, Judge.**

■      Pursuant to ORS 294.485, ten interested taxpayers appealed to this court alleging that the defendant had levied a tax contrary to law. Such an appeal has priority over all other cases pending before the Oregon Tax Court. (ORS 294.520.)

The Department of Revenue moved to intervene, which motion was allowed. Cross-motions for summary judgment were then filed by all the parties. Oral arguments on the motions were heard September 2, 1986.

■      Plaintiffs' complaint alleges that defendant's tax levies for the years 1984-1985 and 1985-1986, as well as the proposed levy for 1986-1987, violate Article XI, section 11, of the Oregon Constitution. However ORS 294.485(2)(a) requires that in order to contest a tax levy, the appealing party must file a complaint within 30 days after the notice of tax levy is filed with the county assessor. Consequently, that part of plaintiffs' complaint dealing with the levies for 1984-1985 and 1985-1986 must be dismissed as untimely filed. This leaves remaining before the court the defendant's proposed tax levy for 1986-1987.

In order to understand the nature of plaintiffs' complaint and the issues it raises, it is necessary to briefly consider the constitutional and statutory provisions which constitute the body of law in this area.

*Constitutional Limitations.* By a 1916 amendment to the Oregon Constitution, section 11 of Article XI limited the amount of tax revenue that could be raised in any year by a tax levying body to the total amount levied in the preceding year, plus six percent. In 1932, section 11 was further amended to allow a tax levying body to impose a levy in any year not in excess of the amount levied by it in one of the three years immediately preceding, plus six percent.

"Taxing bodies were authorized to levy special taxes in

any one year providing legal voters gave their sanction. However, by the 1916 and 1932 constitutional provisions such special tax levy could not be included in the tax base for future levies." *School Dist. 1, Mult. Co. v. Bingham et al,* 204 Or 601, 605, 283 P2d 670, 284 P2d 779 (1955).

■     Increased population, inflation and other economic factors resulted in taxing units having to resort to annual special elections. In order to avoid the necessity of holding such elections, Article XI, section 11 was amended to provide for two methods of determining a tax base. One method was the previous constitutional provision limiting growth to the highest levy during the preceding triennium, plus six percent. The other method authorized a majority of the legal voters to establish a new tax base. It was specifically provided in section 11(3)(a) that the tax base upon which a six percent limitation applied shall not apply to "[t]hat portion of any tax levied which is for the payment of bonded indebtedness or interest thereon." Thus, for purposes of constitutional limitations, tax levies for the payment of bonded indebtedness are treated separately from tax levies for normal operating expenses.

*Operating Levies.* The local budget law (ORS chapter 294) governs the procedure for local governmental units (including school districts) for determining expenditures, resources and necessary tax levies for each school year. Separate estimates are required to be made for debt service and estimates of all expenditures are required in detail. (ORS 294.352).

■     For each fiscal year, the school district must identify expected resources, estimate expenses and ending fund balances. To arrive at a tax levy, the amount of resources other than taxes to be levied that are available to the district are deducted from the estimated expenditures. The remainder, plus an adjustment for discounts and delinquencies, is the tax levy. (ORS 294.371; ORS 294.376; and ORS 294.381.) As indicated above, a taxing body may levy a tax no greater than the amount levied in any one of the three years immediately preceding, plus six percent, without approval of the voters.

*Levy for Payment of Bonded Indebtedness.* Tax levies for the payment of a school district's bonded indebtedness are specifically provided for by statute. ORS 328.260(1) provides:

"The district school board shall ascertain and levy

annually, in addition to all other taxes, a direct ad valorem tax on all the taxable property in the school district, sufficient to pay the maturing interest and principal of all serial school district bonds promptly when and as such payments become due. The amount of the tax may be increased by an amount sufficient to retire any bonds that may be callable. The board shall in each year include the taxes in the school district budget for such year. The taxes shall in each year be certified, extended upon the tax rolls and collected by the same officers in the same manner and at the same time as the taxes for general county purposes."

The statute further specifies that funds for bonded indebtedness shall be kept in a separate fund. If the district fails to levy a tax to pay the bonded indebtedness, the county treasurer is required to certify and levy the tax to raise the required amount. (ORS 328.265(2).)

■        The legislative scheme clearly recognizes, even requires, that bonded indebtedness and the debt service thereof be recognized separately. In preparing detailed estimates of its expenses, ORS 294.352(3) mandates that "[s]eparate estimates shall be made for * * * debt service" which is not to be treated as an operating expense. The governing body must "make and declare the ad valorem tax levy for each fund." (ORS 294.435(1).) Further, ORS 310.060(1) requires the school district to give written notice of the tax levy to the county assessor not later than July 15 of each year, specifying that the notice shall state:

"(c)   The amount levied for the payment of bonded indebtedness or interest thereon."

Presumably levies for the payment of bonded indebtedness are treated separately because the initial decision to incur the bonded indebtedness must be approved by the electorate. Once it is so approved, the statutes mandate that the district levy sufficient taxes to pay the principal and interest on the indebtedness as it falls due. For various reasons, the amount of the levy may fluctuate from year to year, but it has no built-in growth factor and is not subject to the constitutional tax base limitation.

*Fund Transfers.* This case has been submitted to the court on stipulated facts. What appears from these stipulated facts is that defendant transferred funds from its general fund

into its debt service fund for tax years 1984-1985 and 1985-1986. The transfer to the debt service fund in these two years has allowed the defendant to reduce or eliminate its debt service levy. The defendant has proposed the same procedure for the 1986-1987 tax levy. Plaintiffs object that this procedure will enable the defendant to levy a larger amount in its general levy and thereby "artificially" increase its tax base. This position recognizes that if no funds are transferred from the general fund to the debt service fund, there will be greater resources remaining in the general fund and therefore a lesser general levy will be required.

The stipulation fails to express facts which could reveal the motivations for this dispute. The stipulation does indicate that the electorate approved a new tax base for the defendant in 1980. One could surmise that the defendant, having obtained a new tax base, might take action to avoid losing it through erosion. Whatever defendant's motivation, it does not require surmising to conclude that defendant's purpose is to maintain or increase its allowable tax base. A resolution dated August 25, 1986, adopted after the levy was certified to the assessor, indicates that the transferred funds are to be made "from nonproperty tax resources only."

Thus the central question presented by this case is whether a taxing body may utilize nontax resources to pay its bonded indebtedness. Intervenor asserts that any amounts transferred from the general fund to a debt service fund must be presumed from taxes levied. The defendant admitted ORS 328.260(1), "taken literally, would preclude a school district from using resources other than a special property tax levy for the payment of debt service." Defendant's position is that a literal interpretation could render a potentially absurd result.

Defendant contends that ORS 328.260, which requires that debt service be paid from a special sinking fund, does not mean that the only source of money to go into such fund is from a tax levy. Defendant's position is based on ORS 294.361 which requires the district to estimate budget resources by funds and sources and specifically authorizes intrafund revenue transfers. Since general law allows a debtor to direct the application of payment among one or more debts held by a creditor, by analogy defendant argues that a school

district has the right to pay its debts from its nontax resources.

Intervenor, in its memorandum, succinctly states the problems which would flow from such position.

"If a transfer from the General Fund is deemed to be paid from nontax revenues, a district will be able to artificially inflate its tax base in future years for other purposes. There is nothing in the statutes that would require a district to continue a practice of transferring funds from the General Fund to a debt service fund, and if the district changed its policy and shifted its financing of debt service back to a separate debt service levy, for which no voter approval would be required, its available tax base for other purposes would have been increased in amounts equal to the transfers to the debt service fund. This could be far in excess of the six percent growth limitation imposed on tax levies for purposes other than debt service by Article XI, section 11 and would serve to frustrate the purpose of that limitation. Also, the transfer amounts would affect the absolute amount of growth in the tax base because the six percent growth allowance would be calculated in part with respect to these amounts if they remain in 'the amount lawfully levied' in a prior year."

The court concludes that under the applicable constitutional and statutory provisions, any transfer of funds from defendant's general fund to its debt service fund must be deemed to be made from property tax resources to the extent they exist. The reasons for this conclusion are twofold. First, as indicated above, any other conclusion would facilitate avoiding the limitations of the Constitution. This would contravene the policy inherent in the constitutional limitation requiring voter approval outside the expressed limits. Such a result is to be avoided.

Second, the mandatory payment of bonded indebtedness from tax levies is not just a result of the mandatory language of ORS 328.260. It flows from the fact that if the school district refuses or fails to levy a tax to pay its bonded indebtedness, the county treasurer is required to certify and levy the tax to raise the required amount. (ORS 328.265(2).) Under these constraints, unless a school district imposed no levy whatsoever, any amounts transferred from its general fund to the debt service fund must be deemed from property tax sources.

Accordingly, pursuant to ORS 294.485, the court will enter an order modifying the defendant's notice of levy and budget documents for the 1986-1987 tax year to reflect the appropriate segregation between the defendant's proposed levy for general fund purposes, within its tax base, and its debt service levy. The adjustment shall reflect the amount of funds transferred plus a component for discounts and uncollectible taxes and an allowance for cash carryovers. Intervenor shall prepare a proposed order and submit it to the court. Plaintiffs to recover their costs and disbursements.